IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JACKIE REESE, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION FILE |
| EMORY UNIVERSITY and OZZIE HARRIS, | : | NO. 1:14-CV-2222-SCJ |
| Defendants. | : | |

## ORDER

This matter is before the court on Defendant Emory University's motion to dismiss [10]; Defendant Harris's motion to dismiss [18]; and Defendant Emory University's motion to dismiss Plaintiff's Amended Complaint [19].

**I.      Background**

      **A.      Procedural History and Facts Alleged in Amended Complaint**

Plaintiff, Jackie Reese, filed suit against Defendants Emory University and Ozzie Harris, alleging various causes of action for discrimination and retaliation, intentional infliction of emotional distress, and negligent retention/supervision. Defendant Emory University filed a motion to dismiss. Plaintiff responded in part to the motion to dismiss and then filed an Amended Complaint to address other deficiencies alleged by Emory University in its motion to dismiss. After Plaintiff filed her Amended Complaint, Defendant Harris filed his first motion to dismiss and Emory University filed its second motion to dismiss. To address the parties' arguments in the most efficient manner possible, the court accepts

the facts as alleged in Plaintiff's Amended Complaint and then addresses all substantive arguments of the parties whether raised in the first or second briefing of the motions to dismiss.

The court recites the legally relevant facts from the Amended Complaint. *See* Docket Entry [15].[1]  Plaintiff was first employed at Emory in November 2004. *Id.*, ¶ 7.  In April 2011, Plaintiff began working as a Program Administrative Assistant in Equal Opportunity Programs at Emory University. *Id.*, ¶ 9.  As Senior Vice Provost for Community and Diversity, Defendant Ozzie Harris oversaw the Equal Opportunity Programs at Emory. *Id.*, ¶ 12.  The Equal Opportunity Programs office investigates allegations of discrimination at the University. *Id.*, ¶ 13.

During an investigation of complaints by another employee, Plaintiff was interviewed by an Emory University investigator and told the investigator that she saw the conduct complained of by the employee. *Id.*, ¶ 54.  On January 9, 2013, Plaintiff gave another interview to the same investigator in response to a complaint a second employee had filed about Defendant Harris. *Id.*, ¶ 85.  When Plaintiff returned from giving her interview, Harris "demanded" that she come to his office. *Id.*, ¶ 88.  Plaintiff was "fearful" but "obeyed his instructions." *Id.*, ¶ 89.  Defendant Harris "asked Plaintiff to make statements derogatory" of the second employee, "which Plaintiff declined to do." *Id.*, ¶ 90.  "Harris asked Plaintiff

---

[1]As the court explains below, actions taken by Defendant Harris toward other individuals are not relevant to Plaintiff's causes of action.  Although these types of allegations form the majority of Plaintiff's Amended Complaint, the court does not recount them here.

if she had ever seen him angry or raise his voice. Plaintiff said that she had and gave him a specific example." *Id.*, ¶ 91. Plaintiff asked several times to leave, but Defendant Harris refused her requests. *Id.*, ¶ 92. Harris "slammed his hands down on his desk" and said that the complaints of the other two employees were "ridiculous, they're bullshit." *Id.*, ¶ 93. "His tone, demeanor, and actions were physically threatening, especially in that Ms. Reese was by that time alone in the office with Mr. Harris, and she was in fear that he would physically strike her." *Id.*, ¶ 94.

Harris continued the discussion with Plaintiff, asking her to give details of her interview, which she refused to do. *Id.*, ¶ 95. He asked whether he had ever discriminated against black women and "launched into a character assassination" of the second employee and made false statements about her. *Id.*, ¶¶ 96-97. Plaintiff states that Defendant Harris's "emotional state" during this meeting was like a "roller coaster, such that he would calm down, then become enraged when Plaintiff disagreed with a statement he made, then repeat this cycle." *Id.*, ¶ 101. Plaintiff felt "bullied" and that Defendant Harris was trying to "manipulate her words" but she "continued to refuse to make the false statements he wanted her to make." *Id.*, ¶ 102. Plaintiff stopped responding "as she was afraid he would physically strike her, given his lack of control, his outbursts, and the disjointed and bizarre nature of his statements." *Id.*, ¶ 104. Defendant Harris kept Plaintiff in his office until 11:30 p.m. *Id.*, ¶ 105. Thereafter, Plaintiff had anxiety attacks about going to work. *Id.*, ¶ 107.

Defendant Harris made comments that there were people in the office who were deceitful, disloyal, untrustworthy and dishonest. He looked at Plaintiff while making these

3

statements. *Id.*, ¶ 108. He engaged in "frequent outbursts toward employees, including Plaintiff. He yelled at her without reason and/or based on pretextual justifications." *Id.*, ¶ 109. Defendant Harris "insulted" her because of her involvement in the investigations and "refusal to change her statements as he had desired." *Id.*, ¶ 110. Defendant Harris told Ms. Dempsey-Swopes, the Director of the Equal Opportunity Programs, that Plaintiff was "untrustworthy and disloyal and that she 'needed to go.'" *Id.*, ¶ 111. After seeing a picture of Plaintiff with some work colleagues, Defendant Harris told Plaintiff in a "menacing" tone that "It's not a good idea to make friends at work." *Id.*, ¶ 117.

Ms. Dempsey-Swopes attempted to reclassify Plaintiff's position to that of Program Manager which would have increased her salary by $6,000. *Id.*, ¶¶ 120-21. Even though the reclassification had been approved by the Provost and the Chief Financial Officer of Emory University, Defendant Harris refused to approve the reclassification. *Id.*, ¶¶ 122-23; 125. Defendant Harris told Ms. Dempsey-Swopes that Plaintiff was "disloyal" and he "did not trust her." *Id.*, ¶¶ 124, 126-27.

Plaintiff stated that Defendant Harris continued to "become even more bizarre and outrageous in his conduct and statements. He frequently yelled or had outbursts in the office in which he would be physically threatening." *Id.*, ¶ 142, 145. On May 3, 2013, Plaintiff met with Del King, Associate Vice President for Human Resources and complained about the hostile work environment. *Id.*, ¶ 156. Plaintiff asked that a panic button be installed in her office. *Id.*, ¶ 158. On May 14, 2013, Plaintiff spoke to Dr. Claire Sterk, Provost, about her concerns. *Id.*, ¶ 160. She met in person with Dr. Sterk on June 19, 2013. *Id.*, ¶ 170.

4

On June 20, 2013, Plaintiff was contacted by an attorney from an outside law firm who said she was investigating the matter. *Id.*, ¶ 181. The same day, Emory's Office of Legal Counsel provided Plaintiff with a cell phone to use "in the event that she was in physical danger." *Id.*, ¶ 183. On June 25, 2013, Plaintiff was fearful of going to work but managed to make it into the office and told others there that she was resigning because she could not tolerate the environment. *Id.*, ¶¶ 185-86. Plaintiff's last day of work was July 5, 2013. *Id.*, ¶ 187.

On October 7, 2013, Plaintiff learned that Defendant Harris was no longer employed by Emory. *Id.*, ¶ 188. Ms. Dempsey-Swopes asked Plaintiff to return to work and she agreed to do so. She resumed working on October 15, 2013. *Id.*, ¶ 189. Emory University receives federal financial assistance as relevant under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. *Id.*, ¶ 211.

Plaintiff raises the following claims in her Amended Complaint. Count One: gender discrimination in violation of Title IX; Count Two: retaliatory harassment in violation of Title IX; Count Three: interference and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*; Count Four: negligent supervision/negligent retention; Count Five: intentional infliction of emotional distress; Count Six: attorneys' fees and costs under O.C.G.A. § 13-6-11, as well as under Title IX and the Fair Labor Standards Act; Count Seven: Fair Labor Standards Act. Defendants moved to dismiss Plaintiff's Amended Complaint on all counts but for the Fair Labor Standards Act and the Family and Medical Leave Act.

5

### B. Contentions

Defendant Emory University argues that Title VII preempts Title IX with respect to employment discrimination and retaliation claims. Both Defendant Emory University and Defendant Harris argue that Plaintiff's allegations are not sufficient to state a claim for intentional infliction of emotional distress under Georgia law. Further, Defendant Emory University contends that Plaintiff has not adequately pled that it ratified Defendant Harris's behavior or that Defendant Harris acted within the scope of his employment such that Emory University can be held liable for Defendant Harris's acts. Because Plaintiff's substantive claims fail, Defendants argue that the derivative claims of negligent retention/supervision and attorney's fees also fail.

Plaintiff responds that Title IX is not preempted by Title VII and she may pursue her employment discrimination claims in multiple ways. Plaintiff also contends that the allegations in her Amended Complaint describe conduct sufficiently outrageous to constitute intentional infliction of emotional distress. Plaintiff avers that Defendant Emory University can be held liable for Defendant Harris's conduct because it derived a benefit from it as a means of defending against another employee's discrimination lawsuit. Because her intentional infliction of emotional distress claims survives, Plaintiff also avers that her negligent retention/supervision and attorney's fee claims should not be dismissed.

## II. Discussion

On Defendants' motions to dismiss, the court accepts as true the facts stated in Plaintiff's complaint and all reasonable inferences therefore. *Jackson v. Okaloosa County*,

21 F.3d 1531, 1534 (11th Cir. 1994). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### A.     Title IX

Plaintiff's first two causes of action arise under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq*. She alleges that Defendant Emory University discriminated against her on the basis of her gender and then retaliated against her for complaining about the discrimination by allowing Defendant Harris to maintain a hostile work environment.[2] In other words, Plaintiff contends she was discriminated against in her employment. These cases typically arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. For reasons that are not revealed in Plaintiff's Amended Complaint, however, she never filed a Charge of Discrimination against Emory University at the time the events took place and by the time she filed her original complaint, her limitations period to file such a charge had expired. Rendered unable to comply with the

---

[2]The court notes that Plaintiff has barely made any allegations of discrimination based on gender. The only mention Plaintiff makes of different treatment for males is in reference to Maurice Middleton who was hired into a training position. *See* Amended Complaint, ¶¶ 143-44. Plaintiff alleges that although Defendant Harris did not approve of hiring Mr. Middleton, he was "always cordial and polite in his interactions with Mr. Middleton." *Id.*, ¶ 144.

AO 72A
(Rev.8/82)

administrative exhaustion requirements of Title VII, Plaintiff instead attempts to raise her employment discrimination claims through the vehicle of Title IX.

A student may sue a federally funded institution under Title IX to complain of gender based discrimination in funding/accommodation, *see Pederson v. La. State Univ.*, 213 F.3d 858, 877-82 (5th Cir. 2000), denial of admission on the basis of sex, *see Cannon v. University of Chicago*, 441 U.S. 677, 709 (1979), and sexual harassment, *see Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 63 (1992).[3] An employee of a federally funded school may also sue under Title IX for redress of retaliation for complaining about disparate funding in athletic programs. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005).

However, the interplay between Title VII and Title IX is more complex when an employee of a Title IX institution alleges she was discriminated against in her employment. Employment discrimination claims have traditionally been addressed through Title VII which contains robust administrative prerequisites geared toward quickly addressing discrimination in the workplace. *See* 42 U.S.C. § 2000e-5. While it is clear that Title IX prohibits employment discrimination, *see North Haven Board of Education v. Bell*, 456 U.S. 512, 530 (1982) (approving regulations permitting Department of Education to withhold federal funds from violating institution), the question is whether Title IX provides a private

---

[3]Peer-on-peer sexual harassment may also be addressed via § 1983. *See Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009).

8

right of action for an employee to sue alleging employment discrimination when such a right of action would allow the employee to avoid the administrative prerequisites of Title VII.

In *Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995), the court answered that question in the negative. The plaintiff in *Lakoski* was a tenure-track assistant professor at the University of Texas Medical Branch - Galveston. She filed suit after being denied tenure alleging that she was discriminated against on the basis of her sex. The plaintiff, however, did not file a charge of discrimination with the Equal Employment Opportunity Commission or otherwise argue that the University violated Title VII when it denied her tenure application.

The *Lakoski* court stated that to provide an implied private right of action to aggrieved employees for employment discrimination claims would

> disrupt a carefully balanced remedial scheme for redressing employment discrimination by employers such as the University of Texas Medical Branch. We are unwilling to do such violence to the congressionally mandated procedures of Title VII.

*Id.* at 754. The court pointed to the Supreme Court's holding in *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366 (1979), as evidence for Title VII's exclusive remedy scheme. In *Novotny*, the Court held that Title VII preempted a § 1985 action alleging violations of Title VII rights because if "a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of [Title VII's] detailed and specific provisions of the law [and] . . . could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." *Id.* at 375-76. *See also Brown v. General Services Administration*,

425 U.S. 820, 834 (1975) (holding Title VII is exclusive judicial remedy for federal employees' claims of employment discrimination because Court has held in "a variety of contexts" that "a precisely drawn, detailed statute pre-empts more general remedies").

Other courts in the Eleventh Circuit have also held that Title VII is the exclusive remedy for employment discrimination claims against federally funded programs. *See*, *e.g.*, *Torres v. School Dist. of Manatee County, Florida*, Civil Action No. 8:14-CV-1021, 2014 WL 4185364 (M.D. Fla. Aug. 22, 2014); *Thompson v. Barker*, Civil Action No. 2:10-CV-1015, 2011 WL 3583413 (M.D. Ala. July 13, 2011); *Schultz v. Bd. of Trustees of Univ. of West Florida*, 2007 WL 1490714 (N.D. Fla. May 21, 2007); *Morris v. Wallace Cmty. College-Selma*, 125 F. Supp. 2d 1315 (S. D. Ala. 2001); *Blalock v. Dale County Bd. of Educ.*, 84 F. Supp. 2d 1291 (M.D. Ala.1999); *Hazel v. School Bd. of Dade County*, 7 F. Supp. 2d 1349 (S.D. Fla.1998); *Gibson v. Hickman*, 2 F. Supp. 2d 1481, 1484 (M.D. Ga. 1998) (allowing employment discrimination claims under Title IX would "eviscerate Title VII's technical and administrative requirements, thereby giving plaintiffs who work at federally funded educational institutions unfettered ability to bring what are in reality Title VII sexual discrimination claims without adhering to the same rules require of every other employment discrimination plaintiff in the country").

For the reasons stated in *Lakoski*, the court finds that there is not a private right of action for Plaintiff to bring an employment discrimination claim against Defendant Emory University under Title IX. The court GRANTS Defendant Emory University's motion to dismiss Plaintiff's Title IX claims.

### B. Intentional Infliction of Emotional Distress

#### 1. Defendant Harris

In Georgia, to succeed on a claim of intentional infliction of emotional distress, Plaintiff must prove (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *See Phinazee v. Interstate Nationalease, Inc.*, 237 Ga. App. 39, 39-40 (1999). Whether the conduct alleged is egregious enough to sustain a claim of intentional infliction of emotional distress is a question of law. *Id.* Georgia courts have determined that:

> [i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.* (citations and quotations omitted). "Factors include the existence of a relationship in which one person has control over another; the actor's awareness of the victim's particular susceptibility; and the severity of resultant harm." *Trimble v. Circuit City Stores, Inc.*, 220 Ga. App. 498, 499-500 (1996).

Here, a great many of Plaintiff's allegations relate to conduct taken by Defendant Harris toward third parties. Georgia law is clear that such conduct cannot form the basis of Plaintiff's intentional infliction allegations. *See, e.g., Reece v. Chestatee State Bank*, 260

11

Ga App. 136 (2003) ("It is well settled that the tortious conduct must have been directed at the plaintiff in order to be actionable under a theory of intentional infliction of emotional distress."). Plaintiff's citation to a "doctrine of transferred intent" is misplaced as that doctrine is discussed in conjunction with assault and battery or murder and is not relevant to her intentional infliction of emotional distress claim. *See*, *e.g.*, *Carter v. State*, 245 Ga. App. 275 (2000).

Setting aside the extraneous allegations, Plaintiff alleges that Defendant Harris made her listen to him for several hours one evening after Plaintiff spoke with an Emory University investigator concerning complaints made by another employee. Defendant Harris tried to convince Plaintiff to believe that he had not done anything wrong and asked Plaintiff to agree with his disparaging comments about these other employees, which Plaintiff refused to do. After this meeting, Plaintiff alleges that Defendant Harris "insulted" her, yelled at her, made frequent "outbursts;" made "public statements" about disloyal employees while looking at her, and told her it was not a good idea to make friends at work after seeing a picture of Plaintiff with one of the employees who had complained about Defendant Harris. He also refused to reclassify Plaintiff's position which would have given Plaintiff an increase in pay.

Importantly, despite Plaintiff's counsel's argument to the contrary, there are no allegations in the Amended Complaint that Defendant Harris was Plaintiff's supervisor or that Defendant Harris's meeting with Plaintiff occurred after she gave a statement in a federal lawsuit or investigation. None of Plaintiff's participation in the investigation related

to the Equal Employment Opportunity Commission, but rather her involvement was limited to giving an interview to an employee of Emory University tasked with investigating the complaints.

More significantly, there is no allegation in Plaintiff's Amended Complaint that Defendant Harris asked Plaintiff to lie to any investigators. She does allege that during the January 9, 2013 conversation, Harris asked her to make statements derogatory of Ms. Pettigrew and Plaintiff declined to do so. *See* Amended Cmplt., ¶ 90. Plaintiff alleges that Defendant Harris was "trying to manipulate her words, but she continued to refuse to make the false statements he wanted her to make." *Id.*, ¶ 102. Because Plaintiff never alleged Defendant Harris asked her to make false statements to any investigator, the only false statements to which she could be referring are the questions Harris asked her during the January 9, 2013 conversation to which she refused to agree. *See id.*, ¶ 103 ("Harris continued to berate Plaintiff and demand that she state that Ms. Pettigrew was incompetent and that Dr. Sexton was unstable, neither of which were true."). Importantly, Plaintiff never alleges that Defendant Harris asked her to "recant" any statements she made to the Emory University investigator. There is no allegation that Plaintiff made any statements to EEOC investigators or that she would ever have been called upon to do so.[4]

---

[4] In her response to Defendant Emory's second motion to dismiss, Plaintiff asks the court for leave to amend her complaint to add allegations of the date upon which another employee filed her Charge of Discrimination concerning Defendant Harris's actions with the Equal Employment Opportunity Commission. Because the court finds that Plaintiff has not alleged Defendant Harris asked her to "recant" or give "false statements" to the EEOC, the date upon which the other employee's Charge of Discrimination was filed is not relevant

13

While Plaintiff is correct that the court must consider that the events she alleges occurred in the workplace, Georgia law is replete with failed workplace intentional infliction of emotional distress claims. For example, In *Jarrard v. United Parcel Service, Inc.*, 242 Ga. App. 58, 62 (2000), where an employer gave an employee a harsh performance evaluation on the day the employee returned from extended psychiatric care and continued the evaluation despite the employee's tearful requests for postponement, the court of appeals did not find outrageous conduct, despite the fact that plaintiff alleged malicious motivation of the employer because of the employee's prior complaints about transfers and the plaintiff suffered "a complete mental breakdown from which he ha[d] not recovered." *Id.* at 146, 148. *See also Miraliakbari v. Pennicooke*, 254 Ga. App. 156 (2002) (no intentional infliction of emotional distress where employer ordered plaintiff to remain at work after plaintiff learned that her son had been injured at school, employer refused to let employee call school to ask about son's injuries, pulled plug on the phone when the employee attempted to call the school, threatened employee that she would be fired if she left work, and ordered employee to stop crying and return to work); *Bowers v. Estep*, 204 Ga. App. 615 (1992) (where supervisor knew of plaintiff's emotional conditions and "intentionally harassed, threatened, intimidated and belittled him and maliciously changed conditions of his job, causing him to take a leave of absence . . . and be admitted to a psychiatric clinic" facts did not arise to intentional infliction of emotional distress); *Fox v. Ravinia Club, Inc.*,

---

to Plaintiff's claims and there is no need for Plaintiff to amend her complaint to state the date.

14

202 Ga. App. 260 (1991) (finding no outrageous conduct where plaintiff's supervisor spoke to her in a "hostile, intimidating and abusive manner" and gave her false reasons for termination).

On the other hand, the court denied a motion to dismiss an intentional infliction of emotional distress claim in *Trimble v. Circuit City Stores*, 220 Ga. App. 498 (1996), where the plaintiff alleged repeated unwanted touching, rude gestures and comments, and retaliation in the form of denied vacation requests. She also contended that after she filed a Charge of Discrimination alleging sexual harassment, her supervised resigned, but the employer continued harassing the plaintiff, including lowering her commissions, requiring her to lift objects that were too heavy for her, and not compensating her for overtime hours. *Id.* at 499-500. In *Yarbray v. Southern Bell Tel.*, 261 Ga. 703 (1991), the employee had served as a witness in an employment discrimination suit filed by a co-worker and the plaintiff also filed a suit herself. *Id.* at 704. The employer's attorney told the employee "he hoped that [her testifying against the company] would not affect (her) job." *Id.* After the plaintiff testified, she was demoted to a different position. *Id.* at 706.

While the alleged behavior of Defendant Harris is boorish and unpleasant, it does not rise to the level of "extreme or outrageous" to state a claim under Georgia law. Plaintiff never alleged in her Amended Complaint that Defendant Harris asked her to recant any statement she made to an internal investigator. Plaintiff did not allege that Defendant Harris ever made physical contact with her. The distress Plaintiff alleges she suffered does not rise to that described by the plaintiffs in *Jarrad* or *Bowers*. As such, the court finds Plaintiff's

15

allegations here more akin to those in *Jarrad*, *Miraliakbari*, and *Bowers* rather than *Trimble* and *Yarbray* and the court finds that Plaintiff has failed to state a claim for intentional infliction of emotional distress. The court GRANTS Defendants' motions to dismiss Plaintiff's intentional infliction of emotional distress claims.

### 2. Defendant Emory University

Even if Plaintiff had alleged sufficient facts to sustain a claim of intentional infliction of emotional distress for the actions of Defendant Harris, Defendant Emory University also argued that Plaintiff had not established a basis upon which it could be held liable for Defendant Harris's actions. An employer can be liable for the acts of its employees under two theories: (1) respondeat superior and (2) ratification. *See*, *e.g.*, *Travis Pruitt Associates, P.C. v. Hooper*, 277 Ga. App. 1 (2005). "Under the principle of respondeat superior, an employer is liable for negligent or intentional torts committed by an employee in furtherance of and within the scope of the employer's business." *Id.* at 3 (citing *Piedmont Hosp. v. Palladino*, 276 Ga. 612, 613 (2003)). In *Travis Pruitt*, the plaintiff alleged that she was subject to sexual harassment by a co-worker and fellow employee of the Travis Pruitt firm. The court determined that the sexual harassment did not arise out of the employment relationship because the actions were directed at plaintiff for "purely personal reasons" and did not result in the furtherance of the company's business and "were entirely disconnected from the employer's business." *Id.* at 2-3.

Similarly, here, nothing in Plaintiff's description of Defendant Harris's wrongful activities shows they were done in furtherance of any interest of Defendant Emory

University. Harris's alleged actions had nothing to do with his role as Senior Vice Provost, nor were his alleged actions taken on behalf of Emory University. Rather, the University had already undertaken steps to investigate the allegations made against Defendant Harris. It was after Plaintiff met with Emory's own investigator that she alleged Defendant Harris began to take inappropriate actions against her. Thus, Plaintiff is incorrect in her contention that Emory University and Harris's interests were aligned because Emory University would be liable for Harris's activities in any employment discrimination suit.

Plaintiff also argues that it is only in cases of sexual harassment that Georgia courts find the harasser did not take actions in furtherance of the company's business. However, the cases cited by Plaintiff are distinguishable because unlike the instant situation, the action taken by the defendants in those cases was related in some part to their job responsibilities. In *Ellison v. Burger King Corp.*, 284 Ga. App. 814 (2008), the manager/defendant was tasked with responding to customer complaints. A customer made a complaint and then alleged that the manager came out from behind the counter and put her in a headlock while asking "is everything ok now?" *Id.* at 819-20. The court found there that the manager was acting in the course of her employment when she committed the alleged acts because she was addressing a customer complaint, albeit in an inappropriate manner. *Id.*; *see also McCranie v. Langdale Ford Co.*, 176 Ga. App. 281, 283 (1985) ("plaintiff's verbal assault against the employee" which in turn provoked the employee's punching of plaintiff "pertained to the manner and method in which [the employee] performed his salesman's duties"). The court finds that the actions Plaintiff alleges Harris committed were done for

17

purely personal reasons and did not further any business of Emory University. As such, Defendant Emory University cannot be liable for Harris's actions under a respondeat superior theory.

Under the ratification theory of liability, Georgia courts have held that "[a]n act can not be subject to ratification unless done in behalf of the person adopting it and attempting to ratify it." *Travis Pruitt Associates, P.C. v. Hooper*, 277 Ga. App. 1, 4 (2005) (quotation and citation omitted). A plaintiff must also show that the acts were done "in furtherance of the employer's business and within the scope of employment." *Id.* at 3-4.[5] *See*, *e.g.*, *Cramer v. Bojangles' Restaurants, Inc.*, 498 F. App'x 885 (11th Cir. 2012); *Hankerson v. Hammett*, 285 Ga. App. 610, 614 (2007) ("An employer may ratify tortious conduct by an employee, and thereby assume liability for unauthorized conduct, but for liability to be imposed on the employer by ratification, there must be evidence that the employee's conduct was done in furtherance of the employer's business and within the scope of the employment.") (quoting *Travis Pruitt*); *Banks v. AJC International, Inc.*, 284 Ga. App. 22, 25 (2007) (same).

In fact, in *American Multi-Cinema, Inc. v. Walker*, 270 Ga. App. 314 (2004), the court reversed a trial court which had instructed a jury that "[r]atification may be found

---

[5]Although the en banc holding of *Travis Pruitt* is not a model of clarity with respect to the ratification prong, it continues to be cited by Georgia courts for the proposition that a plaintiff must show that the acts were undertaken in furtherance of the employer's business. *See Travis Pruitt Associates, P.C. v. Hooper*, 277 Ga. App. 1, 10-11 (2005) (Phipps, J, specially concurring) (whether "an act was committed within the scope of employment should be a separate, albeit related, inquiry from whether an employee ratified an act after its commission").

18

where it is shown that the employee committed a willful injury and the employer thereafter continued to retain the employee." *Id.* at 317. The court found instead that under Georgia law, where "the employee was acting exclusively for himself and was not acting at all for the master, and did not profess to be acting for the employer, the mere retaining of the servant after knowledge of his tort would not constitute ratification binding the master." *Id.* The court found the charge was erroneous because it could mislead the jury into believing that it could find the employer liable "solely based on its retention" of the employee "after the incident, without regard to whether [the employee] was acting for or on behalf" of the employer. *Id.*; *see also Stewart v. Storch*, 274 Ga. App. 242, 245-46 (2005) ("Generally, ratification requires both knowledge of the act and acceptable of benefits resulting from the act.").

For the same reasons as described above, Plaintiff has not alleged facts to show that Harris's conduct was done in furtherance of Emory University's business and within the scope of his employment. Further, Plaintiff has not alleged any benefit that Emory University accepted as a result of Defendant Harris's alleged acts.

For these reasons, the court GRANTS Defendant Emory University's motion to dismiss Plaintiff's intentional infliction of emotional distress claim.

### C.     Remaining Claims

Because the court has granted Defendants' motion to dismiss Plaintiff's intentional infliction of emotional distress claim, the court also grants their motions to dismiss Plaintiff's derivative negligent retention/supervision and attorney's fee claims.

19

### III. Conclusion

The court GRANTS Defendant Emory University's motion to dismiss [10]; GRANTS Defendant Harris's motion to dismiss [18]; and GRANTS Defendant Emory University's motion to dismiss Plaintiff's Amended Complaint [19].

The only claims remaining in this case are Count Three: Family Medical Leave Act and Count Seven: Fair Labor Standards Act.

**IT IS SO ORDERED** this 29th day of January, 2015.

s/Steve C. Jones
STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)